## SMITH et v KROEGER

Ohio Appeals, 2nd Dist, Montgomery Co

No 1465. Decided July 8, 1938

Shaman, Winer & Schulman, Dayton, for plaintiff.

George E. Nicholas, Dayton, for defendant.

## OPINION

By GEIGER, J.

This cause is before this court on appeal by the Miami Savings & Loan Company and William H. Kroeger, superintendent, from a judgment of the Court of Common Pleas of Montgomery County, rendered May 19, 1937. Said appeal is on question of law and fact.

The question involved is of importance and

has a number of ramifications, but we will endeavor to epitomize the issues and testimony so as to bring it within as narrow a range as possible.

The petition alleges that the defendant, the Miami Savings & Loan Company is engaged in the business of a Building & Loan Association under appropriate laws and as limited by §687 et seq. GC; that Kroeger is the superintendent of the Building & Loan Associations in charge of the liquidation of the defendant in pursuance of said §687 GC.

It is alleged that on the 18th day of April, 1933, Paul A. Warner, then superintendent, ordered the association to liquidate its business in pursuance of §687-21 GC and that he took possession of the business which is now in the possession of Kroeger.

That the plaintiff on the 17th day of October, 1929, deposited with the Buckeye Building & Loan Association the sum of $1000 for which he received a certificate of paid up stock in that association then doing business as a Building & Loan Association; that on the 30th of May, 1930, the Buckeye Association, for a valuable consideration, sold all of its assets to the Miami in consideration of which the Miami, by proper authorization, assumed and agreed to pay all outstanding obligations and liabilities of the Buckeye Association, including all liabilities by reason of paid up stock deposits; that by reason thereof the Miami became indebted to the plaintiff in the sum of $1000.00 and to all other persons similarly situated in amounts of their respective claims; that the plaintiff on the 22nd day of July, 1935, made demand for the payment of his claim which was rejected on the 12th day of August, 1935.

It is alleged that all the foregoing allegations apply equally to numerous other persons who were similarly situated with the plaintiff by reason of being owners of identical certificates and paid up and running stock in the Buckeye Association, which were acquired under identical circumstances; that the question presented is of common and general interest to all such stockholders of said Buckeye Association amounting in all to over 200 persons, because by the rejection of the claim of the plaintiff, each of their said claims was rejected; that there is a unity of interest as to the subject of the action and it is impracticable to bring them all to court or for them to bring separate actions by reason of which this action is brought by the plaintiff for and on behalf of them all for

their individual benefit and to prevent a multiplicity of suits and that none have an adequate remedy at law. Plaintiff prays that his claim and that of all other parties similarly situated be allowed as creditor's claims of the said Miami Savings & Loan Company; and that the books and records of the Miami Company be reformed to establish him and all parties similarly situated as creditors of said Miami Savings & Loan Company and for other relief.

Motions and demurrers were filed by both defendants to this petition, which were overruled.

Thereupon an answer was filed by the Miami Savings & Loan Company.

As a first defense, certain things are admitted, including the fact that the plaintiff, Smith, deposited in the Buckeye Building & Loan Association $1000.00 for which he received a certificate of paid up stock and it is further admitted that on the 30th day of May the Buckeye, for a valuable consideration, sold all its assets and liabilities to the Miami and that as a part of the conditions of said sale, the Miami with proper authorization, assumed and agreed to pay all outstanding obligations and liabilities of the Buckeye, including those by reason of paid up stock deposits; that on the 22nd day of July the plaintiff presented his claim which was rejected.

As a further answer, it is alleged that Paul A. Warner, the then superintendent, took possession of the property of the Miami for the purpose of liquidation and that Kroeger as present superintendent, did on the 21st day of October, 1935, by virtue of §687-22(a) GC order the liquidation transferred from the superintendent to the Miami Savings & Loan Company to be liquidated by its board of directors pursuant to §687-21 GC.

Further answering, the defendant denies that the allegations set out in the petition apply with equal verity to other persons who were situated with the plaintiff by reason of being owners of identical certificates of paid up stock; denies that the same were acquired under identical circumstances; denies that the question presented is of common and general interest to all stockholders of the Buckeye; denies that because of the rejection of the claim of Smith each of their said claims was rejected; denies the other allegations in reference to those alleged to have a unity of interest.

As a second defense, it is alleged that the plaintiff became a stockholder of the Buckeye Building & Loan Association by rea-

son of the purchasing of a certificate of paid up stock and signing a subscription card and agreeing to conform to and abide by the constitution and by-laws, rules and regulations adopted by the Buckeye prior to the time the plaintiff invested in said stock. The answer sets out Article "V" as to membership in the Buckeye, providing that stockholders shall be entitled to all privileges and subject to all liabilities as prescribed by the constitution; that said by-laws provide that as to subscription of stock and transfer of paid up stock, such certificates may be issued to any member paying in its face value or whose stock has matured by payments and dividends; that the issuing of such stock shall be optional and that the dividends may be limited and that there may be attached such other terms and conditions in reference to its issuance as directors deem best; that otherwise the paid up stock should be entitled to the same rights and subject to the same liabilities as other stock. .

The provision of the by-laws as to withdrawals from the Buckeye is set out in full and provides in substance that members and depositors may withdraw any and all, or any part of the money paid on stock subscriptions at any time provided the money is in the treasury and if sufficient money is not in the treasury, the application for withdrawals of both stock and deposit accounts shall be filed as received and paid in the order filed as fast as the receipts of the association will pay the same.

It is averred that the plaintiff remained a stockholder of the Buckeye until May 31, 1930, at which time its assets were purchased by the Miami.

It is further averred that by reason of the transfer to the Miami, plaintiff became a stockholder in the Miami and is estopped from denying ownership of the stock in the Miami by reason of having accepted dividends on said stock in the amount alleged; that prior to the sale and transfer of the Buckeye to the Miami, the Miami had adopted a constitution for the conduct and management of its affairs which has ever since been in force and which provided among other things, that any person who subscribes or becomes the owner of shares shall be a member entitled to all the privileges and subject to all the liabilities of the shareholders; that the provisions as to paid up stock provide that where the face value is paid at the time of issuance the members shall receive a certificate therefor. As to withdrawals and surrenders it is provided that members may withdraw from

the company at any time all or any part of their stock by giving two months notice. The withdrawing members shall be entitled to receive all payments made on stock withdrawn and all dividends, plus their prorata share of all losses and that withdrawing special depositors shall be entitled to receive the amounts of their deposits, provided that should the application for withdrawals exceed the receipts, such application shall be filed and paid in the order in which they are received as fast as the receipts will permit; that on and since the 11th day of May, 1931, the defendant has required all applications of withdrawal to be filed in the order received; that from that date until the defendant was taken over for liquidation the receipts were not sufficient to pay the application for withdrawals; that plaintiff has not given written notice to the secretary of his desire to withdraw his said investments and stock; that the plaintiff has not made an application of withdrawal in respect to the funds described.

As a third defense, the procedure as to the sale by the Buckeye and the purchase by the Miami is set out and it is alleged that the plaintiff and anyone connected with him in the prosecution of this action or for whose benefit it is being prosecuted have ever since known that the assets of the Buckeye have been purchased by the defendant and that its liability had been assumed and that the deposit of the plaintiff as a stockholder is carried, in the financial statement of the Miami at all times subsequent to said purchase, as that of a stockholder; that other persons relying on such financial statement published by the Miami became depositors or creditors relying upon such financial statement and have since become stockholders; that the plaintiff and all persons similarly situated, as stockholders of said Miami, have known that they were so considered by reason of having received dividends or by the withdrawal of funds acknowledging that the same were chargeable to their stock account and by reason of having received various notices and that at no time has the plaintiff or any of those on whose behalf he brings the action objected until the start of this action.

That the plaintiff and those for whose benefit it is claimed the proceeding is brought have been guilty of laches in this matter and should be and are estopped from prosecuting this action; that the plaintiff and those for whose benefit it is claimed he is prosecuting this action made no

demand within 20 days for the payment of the fair cash value of the shares of stock pursuant to the provisions of §8623-72 GC; that the failure of plaintiff and those in like situation to object to the action or to serve notice and demand within 20 days thereafter operates under the provisions of the statute to a consent not only to the sale, but as a subscription to the capital stock of the defendant and has become binding upon them.

On application a master commissioner was appointed, for whose removal a motion was made, for reasons stated.

The defendant, William H. Kroeger, Superintendent, files an answer substantially adopting that filed by the Miami Savings & Loan Company. Thereupon the cause came on for hearing upon the motion to set aside the order appointing the commissioner and all parties having agreed to submit to the court the case of Clement D. Smith in order that the court might determine the meaning of the contract and status of said Smith, and counsel having agreed to present all the testimony and that upon the determination of the claim of Smith, a final order will be made by the court as to the claim of Smith so that the same might be subsequently reviewed. For that reason, final determination of the motion to remove is suspended. Thereupon the court made an order substantially that upon the consideration of the claim of Smith and the testimony, the court finds for the plaintiff, Clement D. Smith, and all persons described in the petition who are similarly situated and against the Miami Savings & Loan Company and does declare that the said Clement D. Smith and other persons similarly situated, are creditors of the Miami Savings & Loan Company.

A motion for new trial was made and overruled and a further motion to vacate the decision rendered, which being overruled, it was decreed that the plaintiff, Clement D. Smith, and all other persons similarly situated be and they are creditors of the Savings & Loan Company from which order notice of appeal was properly given and a bill of exceptions filed and an agreement of counsel that the cause be heard in this court upon the evidence developed in the court below.

## OPINION OF THE COURT BELOW.

While the court wrote no formal opinion in this matter, the record discloses the views that became the basis of the judgment. On page 79 et seq. of the record we find that the court, in substance held, that by the contract the Miami agreed to pay all outstanding notes, deposits, special deposits and running stock certificates. One can not become a stockholder in a company without his consent. If the plaintiff had not consented to become a stockholder that would be construed to mean that he consented to the Miami paying for his stock in the Buckeye.

The court said:

"This contract simply is a purchase contract. Dr. Smith signed the consent to the purchase, to the sale; and the terms of the sale provide that under the sale the Miami agreed to pay his stock in cash. That is what it means. How can you distinguish your promissory note? The Miami agrees to pay all stock deposits, special deposits, accounts, promissory notes. There is no difference. I feel Dr. Smith is a creditor of the Miami under that contract, and all similarly situated."

The oral testimony and the exhibits found in the bill of exceptions are largely confined to the proceedings leading to the sale by the Buckeye to the Miami and the establishment of the machinery with which the Miami cared for the additional assets and liabilities thus brought within the control of the Miami. As to this matter, it appears that there was an offer to sell by the Buckeye which was accepted by the Miami, due notice of which was given to all the stockholders of both corporations, practically all of whom acquiesced in the sale and purchase through the respective stockholders' proceedings. The board of directors of each organization adopted appropriate proceedings. From the record it would appear that it was a sale by the Buckeye and purchase by the Miami. The purchase covered the business and assets of the Buckeye, including all cash on hand and all furniture and fixtures, notes, mortgages, pledged stock and accounts receivable, judgments and contracts and also all real estate including the office building, and any real estate held in trust and the business of the Buckeye, including its good will.

The consideration paid by the Miami was one dollar and the assumption of all outstanding obligations and liabilities of whatever kind and description of the Buckeye including all liabilities by reason of paid up stock deposits, running stock deposits, special deposits on account or on certificates, promissory notes, reserves and undivided profit funds, contracts, etc.

The bill of exceptions discloses two statements of balance at the close of business May 31, 1930, one reflecting the condition of the Miami alone and the second condition after the purchase and absorption of the assets of the Buckeye. The assets of the Miami alone were $14,048,112.46 and of the two companies, $16,525,738.14, an increase of $2,477,625.68.

Before the take over the reserve fund and the undivided profits of the Miami amounted to $326,594.58. After the absorption the reserve and undivided profit was $460,948.96, an increase of $134,354.48. Upon being inquired of as to what constituted this increase in surplus, reply was made by the witness that at the time the Buckeye was taken over there was a profit and loss set up and when the profit and loss settlement was made the undivided profit and reserve was increased. The statement of the Buckeye is referred to but not exhibited and it appears from that, that as to that institution the surplus was $83,575 67 and upon being inquired of as to how the difference was accounted for a reply was made, "I wouldn't know unless it would be through the profit and loss settlement." It appears that there was an increase in the value of the banking building taken over from the Buckeye of $50,000.00.

Before the merger the paid up certificates of stock were $1,168,500.00 and after the merger, $1,666,200.00, an increase of $497,700.00. The increase in the running stock was $2,642,208.00.

These figures even on cursory examination show some fancy financing which should have warned anyone who knew of them that catastrophe was impending.

It appears from the evidence, page 43, et seq., that a new set of cards was set up for both associations, the Buckeye cards being kept separate by being stamped "Buckeye accounts", and that the new accounts were handled by giving them the same designation as they had in the Buckeye. The plaintiff's account then appearing in his name showed a deposit balance of $1000.00 and the payment of certain sums as dividend or interest, which were paid by check from which it could not be ascertained whether the amounts paid were, as a matter of fact, dividends or interest. The whole machinery of the transfer seems to have been to pass the appropriate resolutions by each association for the sale and purchase of the assets of the Buckeye, the setting up of new balance sheets and the making of new cards, stated to be on account of the cash register machines being placed in use, which cards were placed in the files and were no doubt intended to designate the character of the account carried by each individual, whether it be running stock, paid up stock or certificates of deposit. How effective these cards were in disclosing that information may be open to question. However, it does appear that there is no evidence that any of the new stockholders coming into the Miami from the Buckeye signed any new stock subscription cards. The position taken by the plaintiff is that he never did become a stockholder in the Miami; that he relied solely upon the contract made by the Miami with the Buckeye that the Miami would pay the obligations of the Buckeye and that he regarded his claim as an unliquidated obligation of the Miami to pay to him the value of his stock. In spite of his now taking that position, there is considerable in the record from which we might conclude that he was fully aware of the method in which these accounts were handled and that he acquiesced in it. His evidence may be found in the record, page 20 et seq. He states that he was a stockholder in the Buckeye, that he received a certificate of paid up stock designated as "C 3540", which was the ordinary stock certificate for 100 shares and, of course, constituted him a stockholder in the Buckeye. He retained this certificate and still has it in his possession. His new card bears the same certificate number "3540" without the prefix "C". This Buckeye stock certificate is the basis of his cause of action as being an obligation to be paid by the Miami under the terms of its purchase. He received notice of the proposed purchase and knew that it was consummated as he states that he expected to receive a check for $1000.00, but on failure to receive it, he did nothing further with his Buckeye certificate. He received the check which he considered an interest check although he had $2000.00 in stock certificates in the Miami in addition to the $1000.00 formerly in the Buckeye. He states that he knew how much money he had in the Miami and how much interest he should receive and the interest on the $1000.00 was included when the Miami sent him checks for his regular Miami stock.

The Buckeye was turned over to the Miami, May 31, 1930, and the Miami went on notice May 11, 1931, and upon being refused payment, he brought his suit. He states that he never signed any card at the Miami cancelling his ownership in his Buckeye certificate. He filed a claim with the superintendent in which he recited that

in October, 1929, he had deposited $1000.00 with the Buckeye and received a certificate of paid up stock therefor which was in full force on the 31st of May, 1930, on which date the Buckeye was purchased by the Miami; that by the terms of said purchase, the Miami agreed to pay all liabilities of and claims against the Buckeye; that he had made demand upon the Miami for said sum, which demand was rejected and that there is due to him the sum of $1000.00. This claim was rejected on August 13, 1935 after which suit was brought.

There is other evidence offered or tendered and rejected to the effect that between May 31, 1930, the date of the merger, and May 11, 1931, the day upon which the Miami went on notice, more than 800 of the stockholders of the Buckeye availed themselves of the opportunity to withdraw their funds from the Miami in a total amount of nearly $700,000.00. Holders of certificates of deposit and deposit accounts in the Buckeye also withdrew these accounts from the Miami within the year prior to May 11, 1931 in a total of $358,000.00. The total withdrawals within a year after the Buckeye was absorbed by the Miami over $1,000,000.00 was withdrawn by the former patrons of the Buckeye on paid up stock and running stock and certificates of deposit. In the meanwhile, during this period over 1600 new accounts were opened in the Miami. During this period the plaintiff had the right to and apparently could have availed himself of the opportunity to withdraw the $1,000.00 represented by his paid up stock in the Buckeye. It is true he sought to do this after the Miami went on notice and was unable to secure his money. It does not seem probable that the plaintiff was without information as to the action of his fellow depositors in the Buckeye during this period, but apparently he chose to rely not upon the privileges that he could have enjoyed as a stockholder in the Miami, but continued to rely upon a claim to the money by virtue of a contract made between the Miami and the Buckeye. Whether he, as a matter of fact, accepted the new relation as a stockholder in the Miami or still retained his status as a creditor of the Miami by virtue of the purchase contract is properly open to close scrutiny. Trying this case de novo, we may consider pertinent and competent evidence offered and excluded in the court below.

## IS THIS A CLASS SUIT?

The court below made a finding that the plaintiff, Smith, and all persons described in the petition who were similarly situated are creditors of the Miami Savings & Loan Company.

The court thus establishes a preferential claim over stockholders not only for Smith but for some 200 others who were formerly stockholders in the Buckeye but who, it is claimed, are entitled by virtue of Smith's action to be now considered as preferred creditors as against stockholders and entitled to have their claims paid in preference to the stockholders of the Miami.

The petition contains a proper averment to state a cause of action under §11256 GC which section sets out the essentials of the institution of a class action.

However, we find that there was an agreement between the parties, the essential parts of which are recited in the second paragraph of the final order of May 19, 1937, wherein it appears to the effect:

"and counsel for all parties having agreed to submit to the court the case of Clement D. Smith in order that the court might determine the meaning of the contract above mentioned and the status of the said Clement D. Smith; and counsel having further agreed to present to the court all testimony and evidence pertaining to the claim of Clement D. Smith without waiving any rights or privileges to which any of the parties herein might be entitled in addition thereto; and it being further agreed between counsel that upon the determination of the claim of Clement D. Smith a final order would be made by the court as to the claim of Clement D. Smith so that the same might be subject to review."

We regard this agreement as definitely confining the issues to the claim of Clement D. Smith as to his own action against the corporation to determine whether he is a creditor as alleged by him. It definitely excludes from the consideration of the court all questions as to others claiming to be in a like situation and excludes from consideration the claims of others under the allegation that this is a class action under the provisions of §11257 GC. It seems to us that the court below overlooked the force of this agreement because in the same entry the court found for the plaintiff "and all persons described in the petition herein who are similarly situated" and does declare that said Smith "and all persons similarly situated" are creditors of the Miami Savings & Loan Company In our judgment, the entry should be confined

strictly to the issues under the agreement and that the finding of the court below as to others similarly situated involves considerations that were definitely excluded by the agreement of counsel. We are therefore of the opinion that the court's order in this respect was erroneous.

When and if this question is finally brought before the court and the facts present a proper case for the application of the statute authorizing the joinder of numerous persons, such matter may be then considered and determined.

## DID THE PLAINTIFF WAIVE HIS RIGHTS?

Has plaintiff waived any rights under §8623-72 GC? It is claimed by counsel for defendant that the plaintiff was obliged to follow the provisions of §8623-72 GC applying to dissatisfied stockholders in order to preserve his rights. That section provides in substance so far as applicable, that any dissenting stockholder who shall not have voted in favor of the proposals, is entitled to relief when the articles have been amended, or when all or substantially all of the property and assets of the corporation have been authorized to be sold or when a consolidation or re-organization has been authorized and shall be paid the fair cash value of his shares as of the day before the vote was taken authorizing such action. The statute covers or protects the right of dissatisfied stockholders in the event either of an amendment of the corporation, sale of the property or consolidation or re-organization.

If he does not act as provided in said section, it is provided:

"Any shareholder who does not object and demand in writing the payment of the fair cash value of his shares in the manner and at the time hereinbefore provided shall be concluded by the vote of the assenting shareholders."

The plaintiff was a stockholder in the Buckeye Association which sold its property under proper proceedings, to the Miami. While some question might have been raised as to the legality of this sale, none has been. It was consummated through the action of the board of directors and stockholders of both corporations. If the plaintiff in this case was dissatisfied with such sale and wished to have the fair cash value of his stock ascertained and paid to him, he was at liberty to proceed under this section, but he did not choose to proceed. If he had been dissatisfied and failed to act, the penalty would be measured by the provision of the statute above quoted and he would be "concluded by the vote of the assenting shareholders."

Concluded from what and by what vote? Manifestly the vote of the stockholders of his corporation, the Buckeye, authorizing the sale of their property. He could not register any further objections or demand the fair cash value of his stock in money. Had the proposition for sale and purchase included a very pertinent provision to the effect that the stockholders of the Buckeye should, after the property was bought by the Miami, become by virtue of such purchase and sale stockholders in the Miami to the amount and of the character that they were stockholders in the Buckeye and there had been a favorable vote upon this proposition and the plaintiff had refrained from objecting, he would have been concluded by the vote of the stockholders assenting to this proposition, and would have thereby become a stockholder in the Miami. But there was no such vote by the stockholders, strange as it may seem. There was nothing said in the purchase proposition about the Buckeye stockholders becoming stockholders in the Miami and there was no proposition submitted requiring him to dissent, and his failure to do so does not conclude him to deny that he is now a stockholder in the Miami. To have the fair cash value of his stock ascertained would deprive him of the right to secure payment in any other way, but he did not see fit to follow these statutory provisions.

## WHAT OBLIGATION DID THE MIAMI ASSUME TOWARD THE PLAINTIFF, A STOCKHOLDER IN THE BUCKEYE?

The Miami agreed to pay all outstanding obligations and liabilities of the Buckeye, including liability by reason of paid up stock, that is, the obligation to the plaintiff was to discharge all liabilities of the Buckeye by reason of the certificate of stock. The court below took the position that the Miami agreed to pay this stock in cash and that it was the same as agreeing to pay an outstanding promissory note. It agreed to discharge the obligations that the Buckeye owed to him as a paid up common stockholder, the conditions of which have been hereinbefore set out.

This relation between the plaintiff and the defendant has been carefully considered to determine whether or not there is any

principle that would deprive him of the right to proceed to recover ▮ against one with whom he had made no initial contract, but it appears quite clear that he has a right to proceed against the Miami to compel it to carry out its obligation with the Buckeye.

**WHAT RELATION HAS THE PLAINTIFF TO THE DEFENDANT? IS THE PLAINTIFF A CREDITOR OF THE DEFENDANT AS HE CLAIMS TO BE OR IS HE, AS A MATTER OF FACT, A STOCKHOLDER?**

He could not become a stockholder without having subscribed to the stock. The court below stated it in these words, "I can't understand how anyone could become a stockholder in a company without its consent."

An entry of the name of a person in a stock book as a shareholder without proof of knowledge, assent or confirmatory act, is not sufficient to establish such relation. Such a relation is a contractual one and if it existed was created by agreement of both corporation and stockholder and such an agreement may be expressed or implied, but it exists only when both parties have consented to its creation or have so acted that the law implies consent. A corporation, by its own act, can not make one a stockholder nor can one make himself a stockholder without consent of the corporation. The relationship is based on mutual consent. In the present case, Dr. Smith denies that he ever became a stockholder and asserts that he has always held himself in the position of a creditor. There can, however, be no doubt about the intention of the Miami to make all the stockholders of the Buckeye, stockholders in the Miami. They treated these new stockholders no differently from their old stockholders except that their card had printed across its top "Buckeye account". This card had appropriate columns showing withdrawals, deposits, balance and certificate number with columns to show dividends or interest paid and credited. In the case of Dr. Smith this card was not signed.

We have carefully considered the evidence that is claimed to establish his status as a stockholder in the Miami. We are of the opinion that the facts disclosed do not establish his status as a stockholder, but that he is still a creditor of the Miami to the extent of his claim against the Buckeye as assumed by the Miami.

Counsel for both sides have presented interesting arguments as to whether, under the facts disclosed, he was guilty of such laches as to extinguish his right to recovery or whether under the conditions disclosed he is estopped from now asserting his claim.

We do not think it necessary to base our judgment on either defense thus asserted, but believe that the facts justify a finding that he is, as a matter of fact a creditor as above indicated with all the rights of a creditor.

We are therefore of the opinion that while all the facts developed in the case indicate that the plaintiff was carried on the books of the Miami as a stockholder and not as a creditor, yet there is a failure of proof that he, as a matter of fact, is a stockholder. We are of the opinion that he is a creditor with a ▮ right to participate in the fund to the extent of the liability of the Buckeye to him at the time of the purchase assumed by the Miami.

Coming now to render the judgment that the court below should have rendered, the court finds in favor of the plaintiff on the issue as to his right to be classified as a creditor to the extent of his claim against the Buckeye but makes no finding as to the allegation that his action is a class suit on behalf of others alleged to be similarly situated.

Entry accordingly.

BARNES, PJ, and HORNBECK, J, concur.